We'll hear the next case, United States v. Andrei Kaliks. Good morning. May it please the Court, my name is Daryl Fields and I represent Andrei Kaliks. In this case, there were two periods of delay that were not excludable under the Speedy Trial Act. And each period of delay exceeded 70 days. The first period was when counsel filed a motion for a determination of competency, a second motion to determine competency. And that motion was filed on November 12, 2014. And there was no action taken on that motion, other than the court placing it on the court's docket 20 days later on December 2, 2014. But other than that, there was no action taken on that motion. And counsel filed a speedy trial motion on February 16, 2015, which was 76 days after the motion was docketed. Well, there's a mental evaluation that's initially ordered in August of 2014, right? Yes, Your Honor. And Judge Patterson didn't rule on that, on his competence at that point, right? Well, our position is that the November 5 proceeding took care of that. But, I mean, that might be your position. Yes. But what supports that position? I mean, he didn't rule. I mean, he voiced some skepticism, but he didn't rule on the motion, did he? There was no motion. Well. There was no motion. The court's sui sponte on its own, Judge Patterson on his own, ordered competency on August 27th. He asked defense counsel, counsel's position. Defense counsel said at that point, there's no reason to question Calix's competency on August 27th. At that point? Yes. And then in November, counsel said, well, you really need a second evaluation to rule on the motion that you sui sponte made, Judge. Isn't that what happened? What happened is the MCC issued a report on August 16th. The report found Mr. Calix competent. They found that he wasn't mentally ill or incompetent. It found that he was just a person who had the beliefs of the so-called sovereign citizen movement. On November 5th, the court accepted those findings. The court accepted that he was following the beliefs of the sovereign citizen movement, even going so far as to say that he wasn't suffering from any mental illness. Was there an order entered to that effect? There wasn't a written order. And didn't the judge specifically at 76 through 77 specifically instruct counsel that if he wanted to have a hearing, he was to, quote, prepare the papers asking for a hearing on his competency? End of quote. I'm quoting from what the judge said. Yes. On November 5th. Does that not sound like he directed the lawyer to file for papers for a hearing on his client's competency? Yes. Does that sound like a determination of competency to you? The determination was. Is there any reasonable interpretation that that was a determination of competency? The reasonable interpretation is that competency had already been decided. The court's response is that your predecessor was unhappy with the report. I get that. It makes sense to me. And he said, this is a lousy report. This is completely not thorough at all. Yes, Your Honor. And I want a hearing. And the judge gave him what he asked for. How did he get him a ruling that he was competent? I'm sorry, Your Honor. Let me just say. He gave him what he asked for. And so now the judge has violated speedy trial. It's an interesting concept. No. The judge didn't give counsel what counsel asked for. His lawyer wanted a hearing. Did his lawyer ask for a hearing? The lawyer asked for a hearing. He did. He asked for that at 74. But the court didn't give the lawyer a hearing. He told him to file papers. You have to make an application for more, for another motion. How can you possibly tell us, how can you possibly come here and say that the judge had made a ruling of competency? How can you possibly say that? There's no written order. Tell me the words in the record that support your representation to this court. Yes, Your Honor. There was a compensated termination back on November 5, 2014. Because Judge Patterson explicitly says that you're just a person with a sovereign citizen beliefs. You are not suffering from any mental illness. This is not a reflection of any mental illness. But your predecessor, representing his client, vigorously said, I want a hearing. And what did Patterson say? File the papers and I'll give it to you. Your Honor, no. He didn't say that. He didn't say he'll give it to you. He said make an application. There was a request for a second evaluation. Yes. That eventually was granted, right? That request. After the speedy trial motion was addressed. But then Judge Preska granted the second evaluation. But it seems to me that unless Judge Patterson ruled on the motion that was made. Yes, Your Honor. In August, sua sponte, then that motion is still pending. And the request for a second evaluator informs that still open motion. Don't you think? Well, in this case, what Judge Patterson explicitly didn't apply the competency exclusion from the statute. If you look at 877, the appendix 77, the last page, the prosecutor explicitly asked the court to use that exclusion. And the court says no. The court just makes it two weeks. Because counsel has to make a motion. The court doesn't ask for briefing on competency. The government doesn't have to respond. There's no briefing schedule. And once counsel files a motion, the government doesn't respond. There's no briefing schedule for the government to respond. Nor is there any order for any evaluation. In August, the judge on August 27th saw the defendant, said I think he needs a competency determination. The defense counsel said no. We don't think so. The next day, the judge issued an order, August 28th. And things started going their way. But that was the court on its own responding. Yes, Your Honor. But then in November. Yes. Counsel reversed course and said, Judge, we need a second evaluation because it didn't cooperate with the first one. So we need a second one before you can rule as to his competence. Right? No. Counsel didn't reverse course. Two things happened. One, counsel had more experience with Mr. Calix in court. Calix wouldn't talk to counsel at that point. Counsel saw Mr. Calix again in November 5th. And you'll see from the interactions, that was additional evidence. There was extensive interaction between counsel and Mr. Calix. And that was additional information to inform her decision that there needed to be another competency determination, as well as the fact that the MCC determination just seemed to be based on the fact that he was spouting phrases from the what's understood as the sovereign citizen. This is what Ms. Baumgartel said. Yes, Your Honor. November 5th. Your Honor, I don't think that based on this report, the court can conclude that this individual is competent. Yes, Your Honor. So therefore, she requested a second evaluation. Yes, Your Honor. On which the court could then make a finding about competence. And Judge Patterson, I think, clearly was skeptical. But he said, go ahead, make your request in writing. And she did. And eventually, Judge Preska granted that request, ordered a second evaluation, and then a finding was ultimately made. Right? I have the chronology correct. But you have the chronology right. In terms of what explicitly happened on November 5th, Judge Patterson wasn't skeptical, just skeptical. He told Ms. Baumgartel, I can't believe you're making this argument. I can't believe you're arguing that this person is incompetent. But he didn't rule on the competence of Mr. Calix, did he? It was the court's sua sponte inquiry. And the court was satisfied with its inquiry. If counsel wanted something more, he required counsel to make a motion. The court didn't set a briefing schedule. It didn't ask to hear from the government arguments on competency. It gave counsel two weeks to file the motion. Counsel filed it within one week. But it was a motion for a second, another competency determination. Well, I think that's clear. But maybe you said there's a second period that you haven't started yet and the red light's already on. With the indulgence of the presider, I'd ask that you just maybe get to that one. Yes, Your Honor. And the second period was the ends of justice continuance that the court granted the government. This continuance was counsel did not consent to it. Counsel did not request it. Consent is not required. Right? That's often given, but it's neither here nor there. If the judge got consent, but there wasn't, you know, there wasn't sufficient reason under the interest of justice, it wouldn't matter, right? That's the case. Like in the Zedner case, not only did the defendant there actually ask for the 91-day continuance. Consent's sort of beside the point. It is. The actual matter, counsel didn't ask for it, but counsel seemed to be basically not consenting because his client wouldn't talk to him, right? Client wouldn't talk to him, but when client was in court, he was always objecting to everybody, to the court's jurisdiction, to counsel's representation, to everything. But as the Zedner case shows, that an improper ends of justice exclusion requires that the indictment be dismissed, even if there has been a jury trial. But here, there were multiple requests by counsel for adjournments in light of the fact that the client wouldn't speak to him, right? There had been. Yeah. There had been efforts by counsel to do so, but there were no efforts at this time. There were no efforts in 2017 for any extensions to get the client to talk to him. Those efforts ended sometime in the summer. It was in the summer of 2016, it was the last time counsel complained to the Court, that it was in the summer of 2016 that the counsel asked for an extension of time to get Mr. Cox to speak to him. After that, the next proceeding, October 31, was counsel wanted to make sure that Mr. Cox knew about the government's plea offer. But counsel wasn't asking for more time to get Mr. Cox to talk to him. Mr. Cox hadn't talked to his lawyer since the summer of 2014. There was no basis to believe that time was going to improve counsel's relationship with Mr. Cox. And nobody on the defense side was asking for it. Nobody on the defense side was making that argument. The application seems to be because the Court wasn't available for the March 27 trial date, but defense counsel was ready. Defense counsel was ready in March, and there was no reason for an ends of justice continuance. And the government's harmless error, I'm sorry. I was going to say finish up. Yes. The government's harmless error analysis, harmless error argument is destroyed by Zedner. Zedner rejected harmless error. And the government's argument goes a step beyond Zedner. In Zedner, the harmless error was because there was overwhelming evidence of an ends of justice exclusion that the judge didn't make. In this case, the government just says it's the prejudice problem. Two minutes for rebuttal. Thank you. The government. Good morning. May it please the Court. My name is Nathan Wren, and I represent the government in this case, and I also represented the government at trial. Here, there was no Speedy Trial Act violation in the prosecution of Mr. Kalix. First, the time period during which the competency evaluations were pending was automatically and properly excluded pursuant to Section 3161H1A. As mentioned, that's an automatic exclusion that operates as soon as the competency proceedings were initiated by the court in August of 2014. And that exclusion continues until those competency proceedings are resolved in January of 2016. Notably, as the Court has already noted today, Judge Patterson did not make any competency determination in November 2014. There was no judge who made a competency determination until January of 2016. That's a long time, wouldn't you say? That's correct, Your Honor. What accounts for the length of time to appoint or order a second evaluation? Well, there's nothing in the record that explains why Judge Patterson did not rule on the defense's request for a second evaluation sooner than February of 2015. But the statute specifically doesn't require any sort of reasonableness inquiry. Did anybody say, hey, this has been pending for a while, or are you going to rule, or are you going to appoint a second evaluator? Was there anything like that? Well, the first time that we got something like that was with the defendant's speedy trial motion, which happened in February of 2015, at which point Judge Preska properly concluded that time was automatically excluded pursuant to subsection H1A, granted the defense's motion for a second competency evaluation. Subsequently, there was a defense request for a third competency evaluation by a different set of evaluators. All of those evaluations, having come back with the uniform conclusion that the defendant was competent to stand trial, ultimately. The defense was reassigned to Judge Preska in February of 2015. That's correct, Your Honor. Judge Patterson was ill at that point, or? I believe he was. He passed, I believe, in April of that year, if I remember correctly. There's nothing in the record regarding exactly, you know, how that transfer occurred and whether there was a delay associated with that. But the important point for purposes of this appeal is that competency proceedings, while they're pending, exclude time under the Speedy Trial Act. And as this Court recognized in the Vasquez decision. Even if somebody's dropped a ball, that would make the process go faster. That's correct, Your Honor. There is not a reasonableness inquiry. There are other provisions of the Speedy Trial Act that require either a fixed timeframe or a reasonableness inquiry. And this Court recognized in Vasquez that H1A isn't like that. And it makes sense for it to not be like that, because competency proceedings by their nature are factually intricate, require a lot of effort and work by the parties in the Court in making what is a difficult determination. And so Congress, in enacting the Speedy Trial Act, has created an automatic exclusion that simply applies when competency proceedings are initiated. I mean, I'm not subject to a constitutional limit, Liz. The statute does not put a limit on the time it takes for. Did you serve with a copy of the papers that were filed on December 2nd? I personally was not. But, yes, the government received them, yes. So could you have just sat on them for a year and not done anything? The. In the comforts of the specific exclusion. The automatic exclusion of H1A does, in fact, exclude time while competency proceedings are. That would drop as policy would be. Our policy would be and always is to attempt to facilitate prompt resolution of issues like this. And there are obviously constitutional limitations. Well, I understand the constitutional limitations. I'm trying to figure out what your office's policy is now, since you're telling us that you don't have any responsibilities to do it because all the period is told. So I need to know what the U.S. Attorney's Office's policy is. Once you've served with us, you have no responsibility whatsoever to monitor it? We. The government always has an interest in the prompt disposition and resolution of criminal cases. This fellow. This fellow. You read the record and say this fellow caused his own problems. You wait four years to go to trial. And there's no constitutional claim. So I get that. But this. This is not good. And difficult clients or difficult defendants can create difficult situations. I'm not picking on you personally. But when you stand in front of me and you say I don't have any responsibility because the statute specifically set tolls because it's dealing with competency, it upsets me a little bit. Your Honor. Because I don't think it absolves you at all. I think you have a responsibility to the court and to the administration of justice, as you said, to keep an eye on it. I take it that you did or you didn't. Certainly, Your Honor. We don't disagree that there's an obligation to attempt to facilitate the prompt disposition of competency proceedings. I would note the specific delay that's being the focus of this appeal is not an exceptionally long one. The written request for a second competency evaluation was filed in December of 2014. It was. I was talking cumulatively. From the time he was arraigned to the time he was tried was four years, two months. That's correct, Your Honor. But the bulk of that time is a period of time during which I think all parties agree there was a factually intensive series of competency evaluations ongoing. When the issue did resurface, defense counsel asked for additional competency proceedings anyway, right? That's correct. That was in September of 2017, shortly before the trial was scheduled to commence. The defense said, can we reopen the competency proceedings based on our continued inability to effectively communicate with our client? And I think that the district court was well within its discretion at that point in time, especially being mindful of the extent of the delay up to that point in time in saying, I've observed Mr. Kalich's many times in this court. He had his behavior has not changed since the point in time at which all parties agreed, based on the evaluations that had been conducted, he was competent to stand trial. Can I ask you to just get to the second point? The second period that Mr. Fields is talking about is the February 2017 adjournment. And there, your letter, without a lot of explanation, references an understanding that the court was no longer available for a March trial date. And then, the government takes this sort of odd request of saying, we're going to ask for more time because defense counsel needs it, even though the defense counsel is not asking for it. So, first of all, what's the reference to the court's unavailability for a March trial date? Your Honor, first off, by way of background context, in June of 2016, the defense had requested more time in order to try to establish communication. Right, but there's a trial set for March of 2017. That's plenty of time. That's correct. And then, in October of 2016, both the defense and the government agree more time is appropriate, both to try to reestablish communications and also to allow the defense to communicate with Mr. Kalich. That's fine. That's six months before the trial is going to be. Almost five months. So, in February of 2017, my understanding is the court reached out to the parties. You know, trial is imminent at that point. The court is assessing whether the circumstances that warranted an adjournment back in October of 2016 continue to exist. The trial is six weeks away at that point, almost seven weeks away. That's correct, Your Honor. And the court is evaluating whether those circumstances continue to exist. Now, there's no question, if you read that letter, the court was also attempting to manage its schedule, and there were other matters that the court had to attend to. But it was basically checking in with the parties to assess what is the status of this case. And it's informed by the government, based on the government's communications with defense counsel at that point in time, that the circumstances haven't changed since October, when all parties agreed a further adjournment was warranted. And so the court, in its discretion at that point, says — As long as he's not talking to counsel, there can never be a trial, I assume, by that reasoning, right?  And I don't think that's what the district court concluded. But I do think that the district court was within its discretion to say, I'm going to give the defense a further chance to attempt to establish communications with Mr. Kalix in order to preserve continuity of counsel and enable defense to effectively — What does continuity of counsel have to do with that? Well, one other issue that had surfaced in some of these proceedings was that the Federal Defender's Office had suggested to the court that perhaps a different attorney should be appointed for Mr. Kalix. Mr. Kalix never made that request himself, despite being repeatedly given the opportunity to do so at multiple hearings. And so the court continued to appoint the Federal Defenders to represent. But in connection with that, in order to allow them to effectively represent him and prepare for trial, it would have been better, I think we can all agree, if they had been able to communicate with him. And the court was well within its discretion in February of 2017 in saying, I understand circumstances haven't changed from when we previously all agreed more time was warranted. So I'm going to order a little bit more time, around five more months, to allow the defense to attempt to facilitate better communications with their client. Now, the defense doesn't come in and say, no, Your Honor, we're trial ready. Wait, wait, wait. When I start talking, you stop. That's the way it goes in district court and here, right? Mm-hmm. Okay. So you say five months is a little bit of time? Five months is longer than the Speedy Trial Act normally provides, right? Seventy days is what we're talking about. You don't think five months is a long time? Your Honor, I agree that it was a period of time that was beyond the 70 days called for in the Speedy Trial Act. The question here is, did the district court exceed its discretion in deciding that, given the fact that the parties had requested adjournments repeatedly leading up to this point in time, it should, given the fact that the circumstances hadn't changed and without any objection from defense counsel or suggestion from defense counsel either that the defense was trial ready or that the defense didn't anticipate any likelihood of a change in circumstances, that it would give an additional period of time. And the district court determined that the period of time from March 27th to the trial date of September 11th was an appropriate period of time to attempt to facilitate the defense reestablishing communication with their client and preparing for trial. And certainly, there are circumstances in which a district court could exceed its discretion in making a continuance on these facts. Had it been five years or something like that, I think we'd have a different record. But I don't think that in light of all of the circumstances, especially the appearances leading up to that February 2017 order when the court was apprised by both parties that additional time was warranted, giving the defense an additional opportunity, one additional opportunity by continuing the trial until September was well within the district court's discretion. But it doesn't really seem to be the impetus for the adjournment. The adjournment, based on sort of a vague reference in your letter to the court, is that the court's no longer available for the trial date. The court had the defense told the court that the defense was trial ready, and the court would have had to deal with that record, and it would have been a different record. And perhaps the court could have moved around its schedule and made itself trial available on that date, or perhaps the case could have been assigned to another district judge who was available. But there's nothing like that from the defense. The letter also says that the court was available in June. It could have gone sooner in terms of the court's availability. That's correct, Your Honor. But the court has a certain amount of discretion in deciding what an appropriate amount of time is. The previous adjournments had been a similar length of time. There was one in June and one in October. And so it seemed I ---- My only suggestion is that the court's unavailability was not the cause for a delay until September, because the court, even Judge Preska, was available as soon as June. Right. Mr. Baum had a trial in June and July or something, right? Yes. I understand that there ---- That's more than 70 days between when was the original trial date? March 27th. March 27th and June, sometime in June. That's correct, Your Honor. And the court has to balance both the defense counsel's schedules and also the need to provide an adequate amount of time to see if the defense can reestablish communications with the defendant. And in this case, that reestablishment of communications didn't happen, but it was certainly ---- It was in part a result of the court's availability, defense counsel's availability, and the difficulties in communicating with the defendant. There were other reasons as well. And, you know, we cite a case from the First Circuit in our brief saying that when there are scheduling issues that coincide with other reasons that under the Speedy Trial Act are appropriate for the entry of a continuance, that it's appropriate for the court to take those factors into account in determining the ---- what the trial date should be. Thank you. We'll hear the rebuttal. Thank you, Your Honor. First of all, the record is that counsel was ready for trial on March 27th. The government's letter itself just says that counsel has advised this trial schedule he has a trial schedule in July and vacation in June. Counsel on this record did not say he was not ready. Counsel was ready to try the case on March 27th and was available in April and May, even under ---- if you just look at the government's letter. And this argument about continuity of counsel, I just ---- it's hard to understand since if Calix never asked for another lawyer, then there was no reason to believe that he somehow would have, that there was some issue about him going to ask since he hadn't in three years. What he hadn't done in the three years is communicate with counsel. And counsel had apparently, the record indicates, had just given up because counsel wasn't asking for any more continuances for the opportunity to have Mr. Calix change, have some great change and speak to him. So neither of these bases was a proper basis for the ends of justice exclusion. And the ---- But it seemed that Mr. Baum's principal reason for not consenting was that he couldn't get his client to talk to him, right? It wasn't that there's a speedy trial problem and, therefore, we don't consent to this. It's that my client won't talk to me and so I can't consent for him. Isn't that really what Mr. Baum was saying? It ---- Mr. Baum, he said that, but he didn't say he wasn't ready. He was ready for trial. He wasn't asking for an extension of any kind to talk to Mr. Calix. Now, the government ---- The counsel hadn't asked since the preceding summer. But in September he asked for another adjournment based on the need for what he perceived to be another mental competency evaluation. He asked for another competency evaluation because Mr. Calix hadn't been examined in 20 months. The Devens examination was back in December of 2013 was when that report was made. But he still wasn't talking to Mr. Baum, right? But he was in court behaving very bizarrely. Any differently than he was behaving in the ---- in 2015 when Judge Patterson first observed him? It appears that way because Judge Preska excluded him. He didn't appear at his trial. The jury never saw him. The judge excluded him every day. So his behavior had to be much worse because he had been attending court proceedings and always talking and always objecting to counsel speaking for him and always objecting to the court's jurisdiction. But he had been in court proceedings all throughout 2014, 15, 16, 17. It was at the trial that the judge excluded him. And it was at the trial that Mr. Baum finally said, we need another competency evaluation. His behavior was very bizarre, so bizarre that he was banging on the ---- in the cell. The jury panel heard him because the court repeatedly said, everybody in the courtroom could hear what was going on in the cell where he was being held after he'd been removed from court. He apparently had some serious breakdown that permeated the courtroom with his shrieks and screams. So that's why counsel asked for a new competency here. He wasn't asking really ---- he was asking for a new competency determination because it appeared to counsel circumstances had changed. And most of the period here, Mr. Kallix was determined to be competent by December 30th, 2016, and that's after Judge Preska ordered the second competency determination in March of 2015. So that was only a nine-month period of time. And then before then, there was the two months that Judge ---- Judge of the Supersponte inquired by Judge Patterson. So the bulk of the four years was not taken up by a competency determination. The bulk of the two years, only perhaps 11 months was taken up by the period that it took to have examinations and to get reports. Then Mr. Kallix was just a person who sat in MCC for four years, apparently decompensated to the point where he couldn't even attend his trial, where the jury never got to see him. All he did was hear him, and it was just a prejudicial environment. And so for these reasons, we ask that the court reverse the conviction and dismiss the charges. Thank you, Your Honor. Thank you. We'll reserve decision.